## DE FOREST and another *vs.* BATES and others.

Although merchandise may be assigned upon a verbal condition that no suits shall be brought against the assignor, yet, the commencing of actions is not necessarily an avoidance of the contract.

Chancery will frequently relieve, from the operation of conditions subsequent or precedent, where compensation can be made in damages; and, by analogy, where no injury arises.

Where A. in New York, being indebted to B. and C. directs, by letter, the proceeds of a cargo in St. Bartholomews to be sent to B., in order to go in satisfaction of the debts due to B. and C., and this letter is carried out by E. who has promised in writing to facilitate the measure; E. becomes their agent in receiving the property, and A. cannot revoke the authority he has given, nor, by subsequent assignment, deprive them of the benefit of it.

*October 3, 1832.*

*Agreement. Jurisdiction. Debtor and Creditor.*

THE complainants by their bill laid claim to certain merchandise, which arrived at the port of New York from St. Bartholomews in the schooner Tryon, and obtained an injunction restraining the defendants from parting with the bills of lading or property.

Afterwards, the merchandise was sold and the proceeds brought into court.

The circumstances upon which the complainants founded their claim were these :—

The defendant, James C. Bates, was indebted to the complainants separately upon promissory notes. He applied for an extension of time to pay them; and proposed to direct the proceeds of a cargo he had previously shipped to St. Bartholomews to be consigned to the complainant, Charles De Forest, for the purpose of paying such debts.

In confirmation, he, in the city of New York, addressed the following letter to one De Lisle, of St. Bartholomews, dated the 31st of January, 1832 :—

" Please ship to the address of Mr. Charles De Forest the " proceeds of whatever you may have belonging to me, and, " if possible, by the schooner Tryon, he having made me an " advance thereon.

" Yours, &c.

" J. C. BATES."

This letter was given to De Forest; and on the same day it was shown and delivered to the defendant, Russel Chapman, who was about to sail in the schooner Tryon for St. Bartholomews, and who gave Mr. De Forest a receipt in these words:

" Received a letter, of which the above is a copy, from Mr. " Charles De Forest; and I engage to use my best endeavours " to facilitate the shipment and give the property the direction " intended.    New York, January 31st, 1832.

" RUSSELL CHAPMAN."

The property was received from De Lisle at St. Bartholomews by Chapman, and he returned to the city of New York with it.

Upon its arrival, the defendant, Bates, refused to permit the delivery of it to the complainant, De Forest; and such refusal led to the filing of the present bill.

The defendant, James C. Bates, set up in his answer, by way of defence, that he agreed to consign the return property to the complainant, De Forest, upon a condition and promise from the latter that no suits at law should be prosecuted against him upon the notes; yet, in violation of this understanding, Mildeberger, the other complainant, continued to prosecute a suit or suits against him upon the notes which he held, and recovered judgment thereon about the twenty first day of February, one thousand eight hundred and thirty two : in consequence of which, as he insisted, the order became a nullity, and the complainants had no equity under it.    Independently of this, he also insisted, that the order upon De Lisle never had a legal operation or effect to pass any right or title to the complainants; for, as he alleged, almost immediately after delivering the letter and procuring Chapman's receipt to

De Forest, he became satisfied he was doing wrong in giving the complainants such an advantage over his other creditors, and he accordingly wrote on to Chapman, countermanded the order and directed the property to be brought to him. And the answer also set forth, that Chapman thereupon treated the first order as annulled, and received the property from De Lisle in the capacity of supercargo or as agent for the defendant, Bates; and also, that Chapman did not exhibit to De Lisle the letter which had been given in favour of De Forest, but concealed from him all knowledge of its existence. The defendant, Bates, admitted that he was insolvent; and that the property in question was not sufficient to discharge the debts due to the complainants.

On the twenty second day of March, one thousand eight hundred and thirty two, he assigned all his property for the benefit of his creditors generally; and in his answer he submitted that his assignee was entitled to take in preference to the complainants.

No objection was made to the want of parties.

Mr. *Jesse Hoyt*, for the complainants.

Mr. *William P. Hawes*, for the defendants.

October 15, 1832.

THE VICE-CHANCELLOR.    As the answer has not been put in issue by a replication, it must be taken as evidence of what it contains; but it can only be regarded as parol evidence of a verbal understanding which took place at the time of giving the written order, and which, it was alleged, was the consideration or inducement for making it.    It is very questionable whether such evidence is admissible, after what is expressed in writing by the defendant.    The rule on this subject is the same in courts of equity as at law.

But, if the evidence is admissible, it only shows that there is a condition subsequent to be performed, namely, that the complainants should forbear prosecuting any suit or suits at law upon the notes.    It does not necessarily avoid the contract if this condition has not been kept.    The defendant does not allege he has sustained any injury by Mildeberger's proceed-

ing to judgment against him, or been put to the least inconvenience. No execution appears to have been issued against either his person or property, nor has he been compelled to pay any part of the debt.

Under these circumstances, the court ought not to interfere by withholding the property from the parties complainant; since this court will frequently relieve a party from the operation of conditions subsequent or precedent, where compensation can be made in damages for the non-performance or breach—and, by parity, where no injury has been sustained: *Wallis and others, executors of Smith* v. *Grimes and others*, 1 *C. C.* 89 ; *Hayard* v. *Angell*, 1 *Vern.* 222 ; *Cockel* v. *Phipps*, *Dick*, 391.

The next question is, whether the defendant, Bates, could revoke or countermand the order ? I am of opinion he could not. It was not a mere naked power for De Forest to receive whatever property there might be in the hands of De Lisle.— The order amounts to an equitable assignment of the property, founded upon a valuable consideration, therefore carrying with it an interest coupled with the power, and on that account not revokable. I consider one of the points raised and decided in *Peyton* v. *Hallet*, 1 *Caines' R.* 364, and the principle involved in the decision of *M'Mennomy and Townsend* v. *Ferris*, 3 *J. R.* 72, with the cases there mentioned, as perfectly decisive on the subject.

Nor is it of any avail to the defendants that Chapman obtained the property from De Lisle without showing the order in favor of the complainant, De Forest, and, in so acting, laid aside the character of his agency, which he took upon himself when he gave the receipt, and assumed that of supercargo or agent for Bates. If the latter could not lawfully revoke or countermand the first order on De Lisle, the defendant, Chapman, could not shift the agency with which he was entrusted by the same complainant, and convert it into an agency in behalf of the defendant, Bates—more especially as there was no notice to De Forest.

Even if the defendant, Bates, had a *locus penitentiæ*, and he chose to exercise it, then, good faith, on his part, required he

should give immediate notice to the complainant, De Forest, in order to allow the latter an opportunity of pursuing other measures for the recovery of his debt, if he thought proper, instead of waiting for returns from the West Indies.

I am satisfied that nothing which took place between Bates and Chapman, after the former gave the order of the 31st of January, and the latter accepted the agency under it, could, without the knowledge and consent of De Forest, divest him of the rights which he then acquired; and, hence it follows, that Chapman, having received the property from De Lisle, no matter by what means, must be considered as the agent of De Forest, and the property itself as belonging to him.

I must, therefore, decree the proceeds in court to the complainants, to be applied as so much on account of their debts; after deducting the costs of this suit, which are to be paid out of the fund; and under the circumstances disclosed by the answer of the defendant, Chapman, which stands uncontradicted, and from which it does not appear he has acted fraudulently or collusively, I think he is entitled to his costs of appearing and putting in his answer—the same to be paid likewise out of the fund.